ORH
9/3/14

DIS:USAO2011R00466

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

UNITED STATES OF AMERICA

v.

MICHAEL RESNICK,
   aka Michael Reznikov,

ALINA MARGULIS,

GERALD WISEBERG,

WILLIAM CRITTENDEN, and

DANIEL ALEXANDER,

   Defendants.

**UNDER SEAL**

CRIMINAL NO. CCB-14-0412

(Conspiracy to Distribute and Dispense
Oxycodone and Alprazolam, 21 U.S.C. §
846; Maintaining Drug-Involved
Premises, 21 U.S.C. § 856; Distribution
and Dispensing of Oxycodone and
Alprazolam, 21 U.S.C. § 841; Engaging
in Monetary Transactions Involving
More Than $10,000 in Criminally
Derived Property, 18 U.S.C. § 1957;
Structuring Currency Deposits, 31
U.S.C. § 5324(a)(3); Aiding and
Abetting, 18 U.S.C. § 2; Forfeiture, 21
U.S.C. § 853, 18 U.S.C. 982(a)(7), 28
U.S.C. § 2461(c))

*******

**INDICTMENT**

**COUNT ONE**

**(Conspiracy to Distribute and Dispense
Oxycodone and Alprazolam)**

The Grand Jury for the District of Maryland charges that:

**Introduction**

1.    Beginning in or about March 2011 through in or about May 2012, Defendants

MICHAEL RESNICK, ALINA MARGULIS, and GERALD WISEBERG owned and operated

Healthy Life Medical Group ("Healthy Life"), a purported pain management clinic located within

the District of Maryland. In reality, Healthy Life operated as a "pill mill." A pill mill is a

physician's office, clinic, or health care facility that routinely engages in the practice of

prescribing and dispensing controlled substances outside the scope of professional practice and

without a legitimate medical purpose.

2.      Defendants MICHAEL RESNICK and ALINA MARGULIS were married and were residents of New York.   Defendants RESNICK and MARGULIS ran Healthy Life's day-to-day operations, hired and supervised employees, and approved and directed financial transactions on behalf of the company.

3.      Defendant GERALD WISEBERG was a resident of Florida.    Defendant WISEBERG trained Defendants RESNICK and MARGULIS as to the operation of a pain management clinic and later assisted in the operation of Healthy Life.

4.      At all times relevant to this indictment, Defendants MICHAEL RESNICK, ALINA MARGULIS, and GERALD WISEBERG had no known medical education, qualifications, or licensing in the State of Maryland or elsewhere.

5.      Defendant WILLIAM CRITTENDEN was a licensed physician who held Maryland medical license number D0054547 and DEA registration number BC6289676.  As such, Defendant CRITTENDEN was qualified to prescribe controlled substances for legitimate medical purposes and in the usual course of professional practice.  Defendant CRITTENDEN worked as a physician for Healthy Life starting in or about April 2011 until his resignation on August 19, 2011.

6.      Defendant DANIEL ALEXANDER was a licensed physician who held Maryland medical license number D0052815 and DEA registration number BA6030441.   As such, Defendant ALEXANDER was qualified to prescribe controlled substances for legitimate medical purposes and in the usual course of professional practice.   Defendant ALEXANDER worked as a physician for Healthy Life starting in September 2011 until May 2012.

**Background**

7.      Beginning no later than March 2010 through in or about February 2011, Defendant

GERALD WISEBERG owned and operated a "pain management" clinic called Total Care Medical Center, Inc. ("Total Care"), located at 458 W. Hillsboro Blvd., Deerfield Beach, Broward County, Florida.   Total Care was operated as a pill mill.

8.     In late 2010 and early 2011, Defendants MICHAEL RESNICK and ALINA MARGULIS traveled to Deerfield Beach, Florida to learn how to operate a pain management clinic like Total Care.  Defendant GERALD WISEBERG trained Defendants RESNICK and MARGULIS at the Total Care facility.   By early 2011, Defendants RESNICK, MARGULIS, and WISEBERG agreed to open a pain management clinic in Maryland that was substantially similar to Total Care.

9.     On or about February 23, 2011, the Drug Enforcement Agency ("DEA") executed a search and seizure warrant at Total Care, located at 458 W. Hillsboro Blvd., Deerfield Beach, Broward County, Florida.   As a result, the pain clinic was forced to temporarily shut down.

10.    In or about March 2011, Defendants MICHAEL RESNICK, ALINA MARGULIS, and GERALD WISEBERG opened Healthy Life as a purported pain management practice.   The business was initially located at 9607-9609 Reisterstown Road, Owings Mills, Maryland 21117.

11.    Defendant WILLIAM CRITTENDEN was one of the first practitioners hired by Defendants MICHAEL RESNICK, ALINA MARGULIS, and GERALD WISEBERG. Defendant CRITTENDEN served as the medical director at Healthy Life and was paid $1,500 per day during his employment.

12.    On or about August 4, 2011, staff members at the Maryland Board of Physicians—the agency authorized to issue licenses to practice medicine in Maryland and to discipline licensees—conducted an unannounced site visit of the Healthy Life facility to inspect the practice and obtain records.   On or about August 19, 2011, Defendant WILLIAM CRITTENDEN resigned from Healthy Life.

13.    Following Defendant WILLIAM CRITTENDEN's resignation, Defendants MICHAEL RESNICK, ALINA MARGULIS, and GERALD WISEBERG hired another medical director, Defendant DANIEL ALEXANDER, in or about September 2011. Defendant ALEXANDER agreed to work at Healthy Life for $150 per hour.

14.    In or about October 2011, Defendants MICHAEL RESNICK and ALINA MARGULIS moved Healthy Life to a larger space located at 1134 York Road, Suite 101, Timonium, Maryland 21093. The clinic operated in this larger space until on or about May 15, 2012, when Healthy Life ceased operations.

15.    Both Healthy Life locations – 9607-9609 Reisterstown Road, Owings Mills, Maryland 21117 and 1134 York Road, Suite 101, Timonium, Maryland 21093 – attracted large and unruly crowds of customers who began loitering outside the business early in the morning each day. While outside the Healthy Life locations, customers engaged in drug transactions, discarded trash, and caused disturbances.

16.    Between in or about March 2011 through on or about May 15, 2012, Defendants MICHAEL RESNICK, ALINA MARGULIS, and GERALD WISEBERG hired at least a dozen medical professionals, referred to herein as "practitioners," in addition to Defendants WILLIAM CRITTENDEN and DANIEL ALEXANDER. While some of these practitioners were licensed physicians, others were physician assistants who were licensed to prescribe controlled substances under the supervision of the medical directors, Defendants CRITTENDEN and ALEXANDER.

17.    During the operation of Healthy Life, Defendants MICHAEL RESNICK and ALINA MARGULIS controlled two bank accounts in the name of Healthy Life – an account at M&T Bank with an account number ending in 8289 and an account at Bank of America with an account number ending in 2697. Beginning in early 2012, Defendants RESNICK and MARGULIS also controlled two bank accounts at Bank of America in the name of Total Medical

4

Services – one with an account number ending in 3517 and another with an account number ending 3520. As shown below, Defendants RESNICK and MARGULIS used these accounts to deposit some, but not all, of the cash received from the customers of Healthy Life.

18.     Defendant GERALD WISEBERG controlled an account at TD Bank with account number ending in 4289 in name of The Loring Group, Inc., which he used to collect monthly $12,000 payments from Defendants MICHAEL RESNICK and ALINA MARGULIS in exchange for his services.

### Healthy Life Statistics

19.     Between in or about March 2011 through March 2012, approximately 2,423 customers were prescribed medication by practitioners at Healthy Life. Of these customers, approximately 83.5% were not residents of Maryland. Specifically, approximately 762 (31.4%) were from Ohio, approximately 702 (28.9%) were from Kentucky, approximately 231 (9.5%) were from West Virginia, and approximately 92 (3.7%) were from Florida. The remainder of the non-Maryland customers at Healthy Life traveled from Alabama, Arkansas, California, Connecticut, Delaware, Georgia, Louisiana, Michigan, Nevada, New Hampshire, New Jersey, New York, North Carolina, Oregon, Pennsylvania, South Carolina, Tennessee, and Virginia.

20.     Between in or about March 2011 through March 2012, practitioners at Healthy Life issued prescriptions to the approximately 2,423 customers on 8,104 separate office visits. Of these 8,104 separate office visits, the customer received at least one prescription for oxycodone over 97% of the time.

21.     Between in or about March 2011 through March 2012, practitioners at Healthy Life issued prescriptions for approximately 1,383,645 oxycodone pills for a total dosage amount of 31,218,250 mg of oxycodone.

22.     Between in or about April 2011 through on or about August 17, 2011, Defendant

WILLIAM CRITTENDEN issued prescriptions for approximately 328,520 oxycodone pills, a total dosage amount of 7,631,085 mg of oxycodone. During this time frame, Defendant CRITTENDEN issued prescriptions to 1,051 customers on 1,874 separate office visits. Of these 1,874 office visits, the customer received at least one prescription for oxycodone approximately 96% of the time and alprazolam approximately 66% of the time.

23.     Between in or about September 2011 through March 2012, Defendant DANIEL ALEXANDER issued prescriptions for approximately 178,151 oxycodone pills, a total dosage amount of 3,879,500 mg of oxycodone. During this time frame, Defendant ALEXANDER issued prescriptions to 624 customers on 946 separate office visits. Of these 946 office visits, the customer received at least one prescription for oxycodone approximately 97% of the time and alprazolam approximately 23% of the time.

24.     Between April 2012 through on or about May 15, 2012, practitioners at Healthy Life issued prescriptions to customers on approximately 1,600 additional occasions, the vast majority of which included at least one prescription for oxycodone.

### Controlled Substances – General Allegations and Terminology

25.     The Controlled Substances Act governed the manufacture, distribution, and dispensing of controlled substances in the United States, including narcotics that are prescribed by physicians and other licensed health care providers. The Controlled Substances Act and its implementing regulations set forth which drugs and other substances are "controlled substances." Controlled substances were assigned to one of five schedules, Schedule I, II, III, IV, or V, depending on their potential for abuse, likelihood of physical or psychological dependency, accepted medical use, and accepted safety for use under medical supervision.

26.     Title 21, United States Code, Section 841(a)(1), provided that "[e]xcept as authorized by this subchapter, it shall be unlawful for any person to knowingly or intentionally

6

. . . manufacture, distribute, or dispense, or possess with intent to manufacture, distribute, or dispense, a controlled substance."

27.   Title 21, United States Code, Section 802(10), provided that the term "dispense" meant to "deliver a controlled substance to an ultimate user . . . by, or pursuant to the lawful order of, a practitioner, including the prescribing and administering of a controlled substance and the packaging, labeling, or compounding necessary to prepare the substance for such delivery."

28.   Title 21, United States Code, Section 802(11), provided that the term "distribute" meant to "deliver (other than by administering or dispensing) a controlled substance or a listed chemical."

29.   Title 21, United States Code, Section 802(21) provided that the term "practitioner" meant "a physician . . . or other person licensed, registered, or otherwise permitted . . . to distribute [or] dispense . . . a controlled substance in the course of professional practice."

30.   Title 21, Code of Federal Regulations, Section 1306.04, provided, among other things, that a prescription for a controlled substance is valid if it is prescribed for a legitimate medical purpose by an individual practitioner acting in the usual course of his professional practice.   Moreover, an order purporting to be a prescription issued not in the usual course of professional treatment or in legitimate and authorized research was not a valid prescription within the meaning and intent of Title 21, United States Code, Section 829, and the person knowingly issuing it shall be subject to the penalties provided for violations of the law relating to controlled substances.

31.   The DEA issued registration numbers to qualifying practitioners, who became authorized to dispense Schedule II, III, IV, or V controlled substances.   A practitioner must be in compliance with all state laws regarding the practice of medicine and the prescribing of medicine in order to receive and maintain a DEA registration number.

7

32.    The term "Schedule II" meant that the drug or other substance had a high potential for abuse, the drug or other substance had a currently accepted medical use in treatment in the United States or a currently accepted medical use with severe restrictions, and abuse of the drug or other substances may lead to severe psychological or physical dependence.

33.    Oxycodone was a narcotic, opioid analgesic that was similar to morphine and was classified as a Schedule II controlled substance.  It was sold in generic form and under brand names including Oxycontin, Percocet, Roxicodone, Roxicet, and Endocet.  When legally prescribed for a legitimate medical purpose, oxycodone was used to treat moderate to severe pain. However, even if prescribed for a legitimate medical purpose and even if taken in the prescribed amounts, oxycodone could cause physical and psychological dependence.

34.    The term "Schedule IV" meant that the drug or other substance had a low potential for abuse relative to other controlled substances, the drug or other substance had a currently accepted medical use in treatment in the United States, and abuse of the drug or other substances may lead to limited physical dependence or psychological dependence relative to the drugs or other controlled substances.

35.    Alprazolam is a synthetic analgesic that is classified as a Schedule IV controlled substance.  It is available in generic form, but is typically sold under the brand name Xanax.

36.    The discipline of pain management was an accepted and recognized medical sub-specialty practiced by physicians throughout the United States.   Legitimate and qualified pain management experts had specialized knowledge, education, training, and experience and utilized a multi-disciplinary approach, which sometimes included, among other things, prescribing Schedule II, III, IV, and V controlled substances within the scope of the prevailing standards of professional practice and with a legitimate medical purpose.  A prescription for a controlled substance, however, violated the Controlled Substances Act and its implementing regulations if it was issued

8

outside the scope of the prevailing standards of professional practice and without a legitimate medical purpose.

37.    Oxycodone was frequently abused because it was a highly addictive narcotic that gave the user a "high" equivalent to heroin.  Users who abused pills containing oxycodone frequently did so by smoking, chewing, dissolving, injecting, or crushing the pills and then ingesting the substance.  These methods, such as crushing, resulted in a more immediate high because it allowed the active ingredient to more quickly enter the user's system.  Abuse of oxycodone could lead to overdose and, in some cases, death.   The risk of overdose and death was increased if oxycodone was abused along with certain other prescribed controlled substances, such as Alprazolam.   Similar to other illegal narcotics, oxycodone was sold by drug dealers to addicted users, typically for approximately $1 or more per milligram.

### The Charge

38.    Beginning in or about January 2011 through in or about May 2012, in the District of Maryland and elsewhere, the defendants

### MICHAEL RESNICK
### ALINA MARGULIS
### GERALD WISEBERG
### WILLIAM CRITTENDEN, and
### DANIEL ALEXANDER

knowingly and willfully combined, conspired, confederated, and agreed with one another and with others known and unknown to the Grand Jury, to distribute and dispense, and cause to distribute and dispense, a mixture or substance containing a detectable amount of oxycodone, a schedule II controlled substance, and alprazolam, a schedule IV controlled substance, outside the scope of professional practice and not for a legitimate medical purpose, in violation of Title 21, United States Code, Section 841(a)(1).

9

### Manner and Means of the Conspiracy

39.     It was part of the conspiracy that Defendant GERALD WISEBERG trained Defendants MICHAEL RESNICK and ALINA MARGULIS at the Total Care facility located in Deerfield Beach, Florida.

40.     It was further part of the conspiracy that Defendant GERALD WISEBERG agreed to assist Defendants MICHAEL RESNICK and ALINA MARGULIS in the operation of Healthy Life in exchange for fees derived from Healthy Life's distribution and dispensing of controlled substances.

41.     It was further part of the conspiracy that, in exchange for Defendant WISEBERG's assistance, Defendants RESNICK and MARGULIS agreed to pay Defendant WISEBERG $12,000 per month.

42.     It was further part of the conspiracy that Defendants MICHAEL RESNICK, ALINA MARGULIS, and GERALD WISEBERG hired practitioners to work at Healthy Life who had little to no experience in treating chronic pain patients despite knowing the primary purpose of Healthy Life was to prescribe oxycodone to customers in exchange for cash fees.

43.     It was further part of the conspiracy that Defendants MICHAEL RESNICK, ALINA MARGULIS, and GERALD WISEBERG required staff members to call former customers of Total Care and other former and potential customers in an effort to increase business.

44.     It was further part of the conspiracy that Defendant GERALD WISEBERG referred former customers of Total Care to Healthy Life in an effort to increase business.

45.     It was further part of the conspiracy that Defendants MICHAEL RESNICK, ALINA MARGULIS, and GERALD WISEBERG recruited and accepted out-of-state customers, some of whom travelled more than twelve hours by vehicle to obtain oxycodone prescriptions from the practitioners at Healthy Life, including Defendants WILLIAM CRITTENDEN and

DANIEL ALEXANDER.

46.     It was further part of the conspiracy that, as a result of the large and unruly crowds of customers that would congregate and loiter at Healthy Life's offices, Defendants MICHAEL RESNICK, ALINA MARGULIS, and GERALD WISEBERG hired a security guard through an outside security company to maintain order both inside and outside Healthy Life.

47.     It was further part of the conspiracy that Defendants MICHAEL RESNICK, ALINA MARGULIS, and GERALD WISEBERG refused to accept medical insurance from the customers who had such insurance.

48.     It was further part of the conspiracy that Defendants MICHAEL RESNICK, ALINA MARGULIS, and GERALD WISEBERG charged customers a fee of at least $300 for the first visit and at least $250 for all subsequent visits.

49.     It was further part of the conspiracy that Defendants MICHAEL RESNICK, ALINA MARGULIS, and GERALD WISEBERG required the customer to pay the entire fee in cash or by credit card prior to being seen by a practitioner, although the overwhelming majority of customers paid cash.

50.     It was part of the conspiracy that Defendants MICHAEL RESNICK, ALINA MARGULIS, and GERALD WISEBERG refused to issue refunds to customers, even if services were denied.

51.     It was further part of the conspiracy that Defendants MICHAEL RESNICK, ALINA MARGULIS, and GERALD WISEBERG offered reduced fees for subsequent visits if the customer recruited others to utilize Healthy Life's services by passing around flyers and business cards.

52.     It was further part of the conspiracy that Defendants MICHAEL RESNICK, ALINA MARGULIS, and GERALD WISEBERG instructed practitioners not to prescribe more

than 168 oxycodone 30mg pills per office visit in order to reduce the risk of detection by law enforcement.

53.     It was part of the conspiracy that Defendants MICHAEL RESNICK, ALINA MARGULIS, and GERALD WISEBERG required that each customer complete an intake form which asked "do you now or have you ever worked for a Federal, State, or Local Government Agency?" The purpose of this form was to determine if the customer was an undercover law enforcement officer.

54.     It was further part of the conspiracy that Defendants MICHAEL RESNICK, ALINA MARGULIS, GERALD WISEBERG, WILLIAM CRITTENDEN and DANIEL ALEXANDER tried to make Healthy Life appear to be a legitimate medical practice by, among other things, requiring the customer obtain a magnetic resonance imaging report (MRI), requesting that the customer bring prior prescription records, and occasionally collecting urine samples to test for illegal narcotics. In reality, regardless of the results of the imaging reports and urinalyses, the vast majority of customers received oxycodone.

55.     It was further part of the conspiracy that Defendants MICHAEL RESNICK and ALINA MARGULIS regularly permitted customers to be seen by Defendants WILLIAM CRITTENDEN and DANIEL ALEXANDER and other practitioners despite the customer having failed the urinalysis, which meant that the urinalysis results indicated that the customer: (a) had recently taken illegal narcotics (such as cocaine, heroin, and marijuana); (b) had taken medications that had not previously been prescribed; or (c) had not taken previously prescribed medications (indicating likely distribution of the medications prescribed).

56.     It was further part of the conspiracy that Defendants WILLIAM CRITTENDEN and DANIEL ALEXANDER regularly prescribed oxycodone and alprazolam to customers despite the customers having failed the urinalysis test. Defendants CRITTENDEN and ALEXANDER

prescribed oxycodone and alprazolam to some customers even after being directly told that the customers had purchased controlled substances on the street.

57.     It was further part of the conspiracy that, if a customer complained about wanting more oxycodone, Defendants MICHAEL RESNICK and ALINA MARGULIS occasionally directed practitioners, including Defendants WILLIAM CRITTENDEN and DANIEL ALEXANDER, to increase the amount of oxycodone or to maintain previously prescribed strengths of oxycodone.

58.     It was further part of the conspiracy that, if a practitioner refused to issue a prescription for the desired amount of oxycodone, Defendants MICHAEL RESNICK and ALINA MARGULIS occasionally directed the customer to Defendants WILLIAM CRITTENDEN and DANIEL ALEXANDER because Defendants RESNICK and MARGULIS knew that Defendants CRITTENDEN and ALEXANDER would issue a prescription for the desired amount of oxycodone.

59.     It was further part of the conspiracy that Defendants WILLIAM CRITTENDEN and DANIEL ALEXANDER performed minimal and cursory physical examinations of the customers to make it seem like they were practicing with a legitimate medical purpose and in the usual course of professional practice.

60.     It was further part of the conspiracy that Defendants WILLIAM CRITTENDEN and DANIEL ALEXANDER refrained from appreciably reducing the quantity and strength of oxycodone pills prescribed to customers, failed to adjust pain therapy to the individual medical needs of the customers (if there were any) and refrained from prescribing alternative treatment modalities, including physical therapy and interventional pain management procedures.

61.     It was further part of the conspiracy that Defendants WILLIAM CRITTENDEN and DANIEL ALEXANDER, consistent with the business model implemented by Defendants

13

MICHAEL RESNICK, ALINA MARGULIS, and GERALD WISEBERG, issued prescriptions for large quantities of oxycodone to the vast majority of customers who entered Healthy Life. Several of these customers continued to receive prescriptions of large quantities of oxycodone even after overdosing on oxycodone and other controlled substances.

62.    It was further part of the conspiracy that, in addition to oxycodone and alprazolam, Defendants WILLIAM CRITTENDEN and DANIEL ALEXANDER often prescribed other medications to the customers, such as Soma, Gabapentin (Neurontin), Mobic, Elavil, Amitriptyline, and Parafon Forte, in order to create the appearance that the combined cocktail of medications was prescribed for a legitimate medical purpose and in the usual course of professional practice.

63.    It was further part of the conspiracy that the customer was seen by a physician – often Defendants WILLIAM CRITTENDEN or DANIEL ALEXANDER – during the customer's first visit and by a physician assistant working under the supervision of Defendant CRITTENDEN or Defendant ALEXANDER in subsequent visits.

64.    It was further part of the conspiracy that the physician assistants employed at Healthy Life typically deferred to prescribing practices of the physicians and, as a result, the customer continued to receive controlled substances outside the scope of medical practice and without a legitimate medical purpose.

65.    It was further part of the conspiracy that, between in or about March 2011 and November 2011, Defendant MICHAEL RESNICK deposited, and caused to be deposited, the cash proceeds of Healthy Life into one or more bank accounts controlled by him and Defendant ALINA MARGULIS in amounts less than $10,000 in order to avoid detection of law enforcement authorities.

66.    It was further part of the conspiracy that Defendants MICHAEL RESNICK,

14

ALINA MARGULIS, GERALD WISEBERG, WILLIAM CRITTENDEN and DANIEL ALEXANDER distributed and dispensed, and caused to be distributed and dispensed, oxycodone and alprazolam that was not prescribed for a legitimate medical purpose and not in the usual course of professional practice in the following non-exhaustive manners:

a.  inadequately verifying the customer's medical complaint;

b.  conducting cursory, incomplete, inadequate or no medical examination;

c.  collecting and reviewing inadequate customer medical history and follow-up verifications;

d.  conducting insufficient dialogue with the customer regarding treatment options and risks and benefits of such treatments;

e.  primarily treating customers with highly addictive controlled substances while failing to consider other treatment options;

f.  failing to refer customers to specialists for treatment;

g.  "coaching" customers as to what to say in order to justify or attempt to justify prescribing highly addictive controlled substances;

h.  prescribing controlled substances despite inadequate diagnostic testing;

i.  writing prescriptions for customers who admitted to buying or receiving controlled substances on the street and who otherwise demonstrated signs of addiction;

j.  increasing the customers' dosages over time or switching to more powerful controlled substances with no medical justification;

k.  prescribing inappropriate combinations of medications and failing to counsel the customers as to the proper usage and the risks associated with the prescribed cocktail of medications;

l.  treating a large number of out-of-state customers who traveled long distances to Maryland in order to obtain prescriptions for highly addictive controlled substances;

m.  prescribing highly addictive controlled substances to customers who complained of undocumented or uncorroborated physical ailments, such as back and neck pain, where lesser treatment options would be indicated;

n.   failing to assess the risk of abuse for individual customers;

o.   failing to monitor the customers' responses to the medication or compliance with medical usage; and

p.   prescribing controlled substances even after the results of toxicology screens showed non-use of the prescribed controlled substances or use of non-prescribed controlled substances.

In violation of Title 21, United States Code, Section 846.

## COUNT TWO

### (Maintaining Drug-Involved Premises)

The Grand Jury for the District of Maryland further charges that:

1.      Paragraphs 1 through 37 of Count One are re-alleged and incorporated herein as if set forth in full.

2.      Between in or about March 2011 through in or about October 2011, in the District of Maryland, the defendants,

**ALINA MARGULIS
MICHAEL RESNICK, and
GERALD WISEBERG,**

knowingly and intentionally rented, used, and maintained office space at 9607-9609 Reisterstown Road, Owings Mills, Maryland 21117, for the purpose of distributing a mixture and substance containing a detectable amount of oxycodone, a Schedule II controlled substance, and a mixture and substance containing a detectable amount of alprazolam, a schedule IV controlled substance.


In violation of Title 21, United States Code, Section 856(a)(1).

## COUNT THREE

### (Maintaining Drug-Involved Premises)

The Grand Jury for the District of Maryland further charges that:

1.     Paragraphs 1 through 37 of Count One are re-alleged and incorporated herein as if set forth in full.

2.     Between in or about October 2011 through in or about May 2012, in the District of Maryland, the defendants,

**ALINA MARGULIS**
**MICHAEL RESNICK, and**
**GERALD WISEBERG,**

knowingly and intentionally rented, used, and maintained office space at place at 1134 York Road, Suite 101, Timonium, Maryland 21093, for the purpose of distributing a mixture and substance containing a detectable amount of oxycodone, a Schedule II controlled substance, and a mixture and substance containing a detectable amount of alprazolam, a schedule IV controlled substance.


In violation of Title 21, United States Code, Section 856(a)(1).

## COUNTS FOUR THROUGH THIRTY-THREE

### (Distribution and Dispensing of Oxycodone and Alprazolam)

The Grand Jury for the District of Maryland further charges that:

1.  Paragraphs 1 through 37 of Count One are re-alleged and incorporated herein as if set forth in full.

2.  On or about each of the dates listed below, in the District of Maryland and elsewhere, the Defendants listed in the chart below knowingly and intentionally distributed and dispensed, and caused to be distributed and dispensed, a mixture and substance containing a detectable amount of oxycodone, a Schedule II controlled substance, and alprazolam, a schedule IV controlled substance, outside the usual course of professional practice or without a legitimate medical purpose:

| Count | Defendant(s) | Customer | Date | Controlled Substance(s) and Quantity |
|-------|--------------|----------|------|--------------------------------------|
| 4 | **WILLIAM CRITTENDEN** | T.M. | 5/4/2011 | 84 pills of oxycodone 30mg<br>84 pills of oxycodone 15mg<br>56 pills of alprazolam 2mg |
| 5 | **WILLIAM CRITTENDEN** | T.M. | 6/3/2011 | 84 pills of oxycodone 30mg<br>84 pills of oxycodone 15mg<br>56 pills of alprazolam 2mg |
| 6 | **WILLIAM CRITTENDEN** | T.M. | 6/30/2011 | 84 pills of oxycodone 30mg<br>84 pills of oxycodone 15mg<br>56 pills of alprazolam 2mg |
| 7 | **WILLIAM CRITTENDEN** | T.M. | 7/28/2011 | 84 pills of oxycodone 30mg<br>84 pills of oxycodone 15mg<br>28 pills of alprazolam 2mg |
| 8 | **DANIEL ALEXANDER** | T.M. | 9/22/2011 | 84 pills of oxycodone 30mg<br>84 pills of oxycodone 15mg<br>28 pills of alprazolam 2mg |

| 9 | **DANIEL ALEXANDER** | T.M. | 10/27/2011 | 84 pills of oxycodone 30mg<br>112 pills of oxycodone 15mg<br>28 pills of alprazolam 2mg |
|---|---|---|---|---|
| 10 | **WILLIAM CRITTENDEN** | J.F. | 5/27/2011 | 112 pills of oxycodone 30mg<br>112 pills of oxycodone 15mg<br>28 pills of alprazolam 2mg |
| 11 | **WILLIAM CRITTENDEN** | J.F. | 6/24/2011 | 112 pills of oxycodone 30mg<br>112 pills of oxycodone 15mg<br>28 pills of alprazolam 2mg |
| 12 | **WILLIAM CRITTENDEN** | J.F. | 7/25/2011 | 112 pills of oxycodone 30mg<br>112 pills of oxycodone 15mg<br>28 pills of alprazolam 2mg |
| 13 | **DANIEL ALEXANDER** | J.F. | 9/23/2011 | 112 pills of oxycodone 30mg<br>112 pills of oxycodone 15mg<br>28 pills of alprazolam 2mg |
| 14 | **DANIEL ALEXANDER** | J.F. | 10/21/2011 | 112 pills of oxycodone 30mg<br>112 pills of oxycodone 15mg<br>28 pills of alprazolam 2mg |
| 15 | **WILLIAM CRITTENDEN** | T.D. | 6/9/2011 | 112 pills of oxycodone 30mg<br>84 pills of oxycodone 15mg<br>56 pills of alprazolam 2mg |
| 16 | **WILLIAM CRITTENDEN** | "Gregory Martin" | 6/23/2011 | 168 pills of oxycodone 30mg<br>28 pills of alprazolam 2mg |
| 17 | **WILLIAM CRITTENDEN** | "Gregory Martin" | 7/22/2011 | 168 pills of oxycodone 30mg |
| 18 | **WILLIAM CRITTENDEN** | J.I. | 7/5/2011 | 112 pills of oxycodone 30mg<br>112 pills of oxycodone 15mg<br>28 pills of alprazolam 2mg |
| 19 | **WILLIAM CRITTENDEN** | J.I. | 8/2/2011 | 112 pills of oxycodone 30mg<br>112 pills of oxycodone 15mg |
| 20 | **DANIEL ALEXANDER** | J.I. | 10/31/2011 | 112 pills of oxycodone 30mg<br>112 pills of oxycodone 15mg |

| 21 | **WILLIAM CRITTENDEN** | D.B. | 7/18/2011 | 168 pills of oxycodone 30mg<br>56 pills of alprazolam 2mg |
|---|---|---|---|---|
| 22 | **WILLIAM CRITTENDEN** | J.D. | 7/20/2011 | 168 pills of oxycodone 30mg |
| 23 | **WILLIAM CRITTENDEN** | R.J. | 7/25/2011 | 84 pills of oxycodone 30 mg |
| 24 | **DANIEL ALEXANDER** | M.T. | 9/28/2011 | 196 pills of oxycodone 30mg<br>168 pills of oxycodone 15mg<br>28 pills of alprazolam 2mg |
| 25 | **DANIEL ALEXANDER** | M.T. | 10/26/2011 | 168 pills of oxycodone 30mg<br>168 pills of oxycodone 15mg<br>28 pills of alprazolam 2mg |
| 26 | **DANIEL ALEXANDER** | M.T. | 12/22/2011 | 112 pills of oxycodone 30mg<br>168 pills of oxycodone 15mg<br>56 pills of alprazolam 2mg |
| 27 | **DANIEL ALEXANDER** | M.T. | 2/27/2012 | 112 pills of oxycodone 30mg<br>112 pills of oxycodone 15mg<br>28 pills of alprazolam 2mg |
| 28 | **DANIEL ALEXANDER** | J.C. | 10/14/2011 | 168 pills of oxycodone 30mg<br>112 pills of oxycodone 15mg |
| 29 | **DANIEL ALEXANDER** | J.C. | 11/10/2011 | 168 pills of oxycodone 30mg<br>112 pills of oxycodone 15mg<br>28 pills of alprazolam 2mg |
| 30 | **DANIEL ALEXANDER** | J.C. | 12/8/2011 | 168 pills of oxycodone 30mg<br>112 pills of oxycodone 15mg<br>28 pills of alprazolam 2mg |
| 31 | **DANIEL ALEXANDER** | J.C. | 1/11/2012 | 168 pills of oxycodone 30mg<br>112 pills of oxycodone 15mg<br>56 pills of alprazolam 2mg |

| 32 | **DANIEL ALEXANDER** | C.S. | 10/21/2011 | 84 pills of oxycodone 30mg<br>112 pills of oxycodone 15mg |
| 33 | **DANIEL ALEXANDER** | C.S. | 1/12/2012 | 168 pills of oxycodone 30mg |

In violation of Title 21, United States Code, Section 841 and Title 18, United States Code, Section 2.

## COUNTS THIRTY-FOUR THROUGH FORTY-TWO

### (Engaging in Monetary Transactions Involving More Than $10,000 in Criminally Derived Property)

The Grand Jury for the District of Maryland further charges that:

1.      Paragraphs 1 through 24 of the Count One are re-alleged and incorporated herein as if set forth in full.

2.      On or about the dates set forth below, in the District of Maryland and elsewhere, the defendants listed in the chart below, did knowingly engage in the following monetary transactions in criminally derived property of a value greater than $10,000 and that was derived from a specified unlawful activity, that is, a conspiracy to distribute and dispense oxycodone and alprazolam, in violation of 21 U.S.C. § 846, with such monetary transactions affecting interstate commerce:

| Count | Defendant | Date | Monetary Transaction | Bank Account |
|-------|-----------|------|----------------------|--------------|
| 34 | **ALINA MARGULIS** | 6/6/2011 | Check payable to The Loring Group in the amount of $12,000 | Healthy Life Medical Group, M&T Bank, account number ending in 8289 |
| 35 | **ALINA MARGULIS** | 7/1/2011 | Check payable to The Loring Group in the amount of $12,000 | Healthy Life Medical Group, M&T Bank, account number ending in 8289 |
| 36 | **ALINA MARGULIS** | 8/1/2011 | Check payable to The Loring Group in the amount of $12,000 | Healthy Life Medical Group, M&T Bank, account number ending in 8289 |
| 37 | **ALINA MARGULIS** | 10/28/2011 | Check payable to The Loring Group in the amount of $12,000 | Healthy Life Medical Group, M&T Bank, account number ending in 8289 |
| 38 | **ALINA MARGULIS** | 12/8/2011 | Check payable to The Loring Group in the amount of $12,000 | Healthy Life Medical Group, M&T Bank, account number ending in 8289 |

| 39 | **ALINA MARGULIS** | 1/12/2012 | Check payable to The Loring Group in the amount of $12,000 | Healthy Life Medical Group, Bank of America, account number ending in 2697 |
|----|-------------------|-----------|-------------------------------------------------------------|----------------------------------------------------------------------------|
| 40 | **MICHAEL RESNICK** | 2/6/2012 | Check payable to The Loring Group in the amount of $12,000 | Total Medical Services, Bank of America, account number ending in 3517 |
| 41 | **MICHAEL RESNICK** | 3/13/2012 | Check payable to The Loring Group in the amount of $12,000 | Total Medical Services, Bank of America, account number ending in 3517 |
| 42 | **MICHAEL RESNICK** | 4/6/2012 | Check payable to The Loring Group in the amount of $12,000 | Total Medical Services, Bank of America, account number ending in 3517 |

In violation of Title 18, United States Code, Section 1957 and Title 18, United States Code, Section 2.

## COUNT FORTY-THREE

### (Structuring Currency Deposits)

The Grand Jury for the District of Maryland further charges that:

1.      Paragraphs 1 through 24 of the Count One are re-alleged and incorporated herein as if set forth in full.

### Structuring Currency – General Allegations and Terminology

2.      Title 31, United States Code, Section 5313, and 31 C.F.R. §§ 1010.311 and 1010.306(a)) required that a financial institution that engages in a currency transaction involving more than $10,000 in U.S. Currency must file a report of the transaction with the Internal Revenue Service.

3.      31 C.F.R. § 1010.313(b) provided that multiple transactions at the same financial institution on the same day must be treated as a single transaction.   Deposits made on a weekend or holiday are treated as if received on the next business day.

4.      Title 31, United States Code, Section 5324(a)(3) and 31 C.F.R. § 1010.314(c) made it an offense to structure or assist in structuring, or attempt to structure or assist in structuring, any transaction with one or more domestic financial institutions.

5.      31 C.F.R. § 1010.100(xx) defined "structuring" to include conducting one or more transactions in currency, in any amount, at one or more financial institutions, on one or more days, in any manner, for the purpose of evading the reporting requirements under section 1010.311. The regulation applied to a person "acting alone, or in conjunction with or on behalf of other persons," and defined "in any manner" to include the breaking down of a single sum of currency exceeding $10,000 into smaller sums, as well as conducting a series of currency transactions, including transactions "at or below $10,000."   Finally, the regulation provided that "[t]he transaction or transactions need not exceed the $10,000 reporting threshold at any single financial

institution on any single day in order to constitute structuring."

**The Charge**

6.      Between on or about May 2011 and on or about May 2012, and on the dates specified in the chart below, in the District of Maryland and elsewhere, the defendant,

**MICHAEL RESNICK**

knowingly structured currency transactions, and caused currency transactions to be structured, with one or more financial institutions for the purpose of evading the reporting requirements of 18 U.S.C. § 5313, and the regulations promulgated thereunder, and as part of a pattern of illegal activity involving more than $100,000 in a 12-month period, in that the defendant made, or caused to be made, the cash deposits in the chart below, all of which were less than $10,000:

| Date | Cash Deposit | Bank Account | Branch Location |
|---|---|---|---|
| 5/13/2011 | $8,250.00 | Healthy Life Medical Group, M&T Bank, account number ending in 8289 | Owings Mills (Maryland) |
| 5/13/2011 | $4,100.00 | Healthy Life Medical Group, M&T Bank, account number ending in 8289 | Owings Mills (Maryland) |
| 6/17/2011 | $9,340.00 | Healthy Life Medical Group, Bank of America, account number ending in 2697 | Garrison Forest (Maryland) |
| 6/17/2011 | $4,720.00 | Healthy Life Medical Group, M&T Bank, account number ending in 8289 | Owings Mills (Maryland) |
| 6/21/2011 | $6,000.00 | Healthy Life Medical Group, Bank of America, account number ending in 2697 | Garrison Forest (Maryland) |
| 6/21/2011 | $6,945.00 | Healthy Life Medical Group, M&T Bank, account number ending in 8289 | Owings Mills (Maryland) |
| 6/23/2011 | $8,735.00 | Healthy Life Medical Group, Bank of America, account number ending in 2697 | Garrison Forest (Maryland) |
| 6/28/2011 | $8,320.00 | Healthy Life Medical Group, Bank of America, account number ending in 2697 | Garrison Forest (Maryland) |

| | | | |
|---|---|---|---|
| 6/28/2011 | $9,000.00 | Healthy Life Medical Group, M&T Bank, account number ending in 8289 | Owings Mills (Maryland) |
| 6/30/2011 | $3,000.00 | Healthy Life Medical Group, Bank of America, account number ending in 2697 | Garrison Forest (Maryland) |
| 6/30/2011 | $7,000.00 | Healthy Life Medical Group, M&T Bank, account number ending in 8289 | Owings Mills (Maryland) |
| 7/5/2011 | $9,000.00 | Healthy Life Medical Group, Bank of America, account number ending in 2697 | Garrison Forest (Maryland) |
| 7/6/2011 | $3,000.00 | Healthy Life Medical Group, M&T Bank, account number ending in 8289 | Owings Mills (Maryland) |
| 7/8/2011 | $5,000.00 | Healthy Life Medical Group, Bank of America, account number ending in 2697 | Garrison Forest (Maryland) |
| 7/13/2011 | $5,000.00 | Healthy Life Medical Group, Bank of America, account number ending in 2697 | Garrison Forest (Maryland) |
| 7/14/2011 | $5,000.00 | Healthy Life Medical Group, Bank of America, account number ending in 2697 | Garrison Forest (Maryland) |
| 7/15/2011 | $5,000.00 | Healthy Life Medical Group, Bank of America, account number ending in 2697 | Garrison Forest (Maryland) |
| 7/21/2011 | $9,280.00 | Healthy Life Medical Group, Bank of America, account number ending in 2697 | Garrison Forest (Maryland) |
| 7/26/2011 | $7,770.00 | Healthy Life Medical Group, Bank of America, account number ending in 2697 | Garrison Forest (Maryland) |
| 7/27/2011 | $4,000.00 | Healthy Life Medical Group, M&T Bank, account number ending in 8289 | Baltimore (Maryland) |
| 7/29/2011 | $5,000.00 | Healthy Life Medical Group, Bank of America, account number ending in 2697 | Garrison Forest (Maryland) |
| 8/1/2011 | $9,000.00 | Healthy Life Medical Group, M&T Bank, account number ending in 8289 | Owings Mills (Maryland) |
| 8/2/2011 | $3,000.00 | Healthy Life Medical Group, M&T Bank, account number ending in 8289 | Owings Mills (Maryland) |
| 8/4/2011 | $8,000.00 | Healthy Life Medical Group, Bank of America, account number | Garrison Forest (Maryland) |

| | | ending in 2697 | |
|---|---|---|---|
| 8/4/2011 | $2,000.00 | Healthy Life Medical Group, M&T Bank, account number ending in 8289 | Owings Mills (Maryland) |
| 8/5/2011 | $4,000.00 | Healthy Life Medical Group, Bank of America, account number ending in 2697 | Garrison Forest (Maryland) |
| 8/11/2011 | $8,900.00 | Healthy Life Medical Group, Bank of America, account number ending in 2697 | Garrison Forest (Maryland) |
| 8/23/2011 | $4,950.00 | Healthy Life Medical Group, M&T Bank, account number ending in 8289 | Owings Mills (Maryland) |
| 8/24/2011 | $3,000.00 | Healthy Life Medical Group, Bank of America, account number ending in 2697 | Garrison Forest (Maryland) |
| 8/24/2011 | $3,000.00 | Healthy Life Medical Group, M&T Bank, account number ending in 8289 | Owings Mills (Maryland) |
| 8/26/2011 | $7,900.00 | Healthy Life Medical Group, Bank of America, account number ending in 2697 | Garrison Forest (Maryland) |
| 8/26/2011 | $4,000.00 | Healthy Life Medical Group, M&T Bank, account number ending in 8289 | Owings Mills (Maryland) |
| 9/2/2011 | $9,150.00 | Healthy Life Medical Group, Bank of America, account number ending in 2697 | Garrison Forest (Maryland) |
| 9/22/2011 | $3,500.00 | Healthy Life Medical Group, Bank of America, account number ending in 2697 | Garrison Forest (Maryland) |
| 9/23/2011 | $5,000.00 | Healthy Life Medical Group, Bank of America, account number ending in 2697 | Garrison Forest (Maryland) |
| 9/23/2011 | $5,000.00 | Healthy Life Medical Group, Bank of America, account number ending in 2697 | Garrison Forest (Maryland) |
| 9/23/2011 | $5,000.00 | Healthy Life Medical Group, M&T Bank, account number ending in 8289 | Owings Mills (Maryland) |
| 9/23/2011 | $5,000.00 | Healthy Life Medical Group, M&T Bank, account number ending in 8289 | Owings Mills (Maryland) |
| 10/6/2011 | $7,030.00 | Healthy Life Medical Group, Bank of America, account number ending in 2697 | Garrison Forest (Maryland) |

| 10/6/2011 | $5,100.00 | Healthy Life Medical Group, M&T Bank, account number ending in 8289 | Owings Mills (Maryland) |
|---|---|---|---|
| 10/13/2011 | $5,000.00 | Healthy Life Medical Group, Bank of America, account number ending in 2697 | Garrison Forest (Maryland) |
| 10/13/2011 | $5,000.00 | Healthy Life Medical Group, M&T Bank, account number ending in 8289 | Owings Mills (Maryland) |
| 10/27/2011 | $8,130.00 | Healthy Life Medical Group, Bank of America, account number ending in 2697 | Garrison Forest (Maryland) |
| 10/27/2011 | $8,000.00 | Healthy Life Medical Group, M&T Bank, account number ending in 8289 | Owings Mills (Maryland) |
| 11/3/2011 | $7,050.00 | Healthy Life Medical Group, Bank of America, account number ending in 2697 | Garrison Forest (Maryland) |
| 11/3/2011 | $8,150.00 | Healthy Life Medical Group, M&T Bank, account number ending in 8289 | Owings Mills (Maryland) |
| 11/10/2011 | $9,455.00 | Healthy Life Medical Group, Bank of America, account number ending in 2697 | Garrison Forest (Maryland) |
| 11/15/2011 | $8,770.00 | Healthy Life Medical Group, M&T Bank, account number ending in 8289 | Owings Mills (Maryland) |
| 11/16/2011 | $7,075.00 | Healthy Life Medical Group, M&T Bank, account number ending in 8289 | Owings Mills (Maryland) |
| 11/17/2011 | $8,000.00 | Healthy Life Medical Group, Bank of America, account number ending in 2697 | Garrison Forest (Maryland) |
| 11/18/2011 | $7,000.00 | Healthy Life Medical Group, Bank of America, account number ending in 2697 | Garrison Forest (Maryland) |
| 11/28/2011 | $8,000.00 | Healthy Life Medical Group, Bank of America, account number ending in 2697 | Garrison Forest (Maryland) |
| 11/28/2011 | $3,800.00 | Healthy Life Medical Group, M&T Bank, account number ending in 8289 | Owings Mills (Maryland) |
| 11/29/2011 | $3,270.00 | Healthy Life Medical Group, Bank of America, account number ending in 2697 | Garrison Forest (Maryland) |
| 11/29/2011 | $6,000.00 | Healthy Life Medical Group, M&T Bank, account number ending | Owings Mills (Maryland) |

| | | in 8289 | |
|---|---|---|---|
| 11/30/2011 | $7,000.00 | Healthy Life Medical Group, Bank of America, account number ending in 2697 | Garrison Forest (Maryland) |
| 12/6/2011 | $7,000.00 | Healthy Life Medical Group, M&T Bank, account number ending in 8289 | Owings Mills (Maryland) |
| 12/7/2011 | $7,790.00 | Healthy Life Medical Group, Bank of America, account number ending in 2697 | Timonium (Maryland) |
| 12/7/2011 | $5,000.00 | Healthy Life Medical Group, M&T Bank, account number ending in 8289 | Towson (Maryland) |
| 12/9/2011 | $8,000.00 | Healthy Life Medical Group, M&T Bank, account number ending in 8289 | Towson (Maryland) |
| 12/29/2011 | $9,300.00 | Healthy Life Medical Group, Bank of America, account number ending in 2697 | Timonium (Maryland) |
| 12/29/2011 | $9,740.00 | Healthy Life Medical Group, M&T Bank, account number ending in 8289 | Towson (Maryland) |
| 12/30/2011 | $8,700.00 | Healthy Life Medical Group, Bank of America, account number ending in 2697 | Timonium (Maryland) |
| 12/30/2011 | $6,260.00 | Healthy Life Medical Group, M&T Bank, account number ending in 8289 | Towson (Maryland) |
| 1/11/2012 | $9,985.00 | Total Medical Services, Bank of America, account number ending in 3520 | Timonium (Maryland) |
| 1/12/2012 | $1,785.00 | Total Medical Services, Bank of America, account number ending in 3517 | Timonium (Maryland) |
| 1/12/2012 | $6,955.00 | Total Medical Services, Bank of America, account number ending in 3520 | Timonium (Maryland) |
| 1/13/2012 | $3,000.00 | Total Medical Services, Bank of America, account number ending in 3520 | Timonium (Maryland) |
| 1/18/2012 | $9,500.00 | Total Medical Services, Bank of America, account number ending in 3517 | Timonium (Maryland) |
| 1/23/2012 | $9,600.00 | Total Medical Services, Bank of America, account number ending in 3517 | Brighton Beach (New York) |

| | | | |
|---|---|---|---|
| 1/24/2012 | $2,400.00 | Total Medical Services, Bank of America, account number ending in 3517 | Timonium (Maryland) |
| 1/24/2012 | $9,880.00 | Total Medical Services, Bank of America, account number ending in 3520 | Timonium (Maryland) |
| 1/25/2012 | $7,700.00 | Total Medical Services, Bank of America, account number ending in 3520 | Timonium (Maryland) |
| 1/27/2012 | $5,000.00 | Total Medical Services, Bank of America, account number ending in 3517 | Timonium (Maryland) |
| 1/31/2012 | $3,500.00 | Healthy Life Medical Group, Bank of America, account number ending in 2697 | Timonium (Maryland) |
| 1/31/2012 | $6,575.00 | Total Medical Services, Bank of America, account number ending in 3520 | Timonium (Maryland) |
| 2/2/2012 | $7,500.00 | Total Medical Services, Bank of America, account number ending in 3517 | Timonium (Maryland) |
| 2/6/2012 | $7,500.00 | Total Medical Services, Bank of America, account number ending in 3517 | Avenue U & East 21st St. (New York) |
| 2/6/2012 | $9,500.00 | Total Medical Services, Bank of America, account number ending in 3520 | Timonium (Maryland) |
| 2/6/2012 | $9,500.00 | Total Medical Services, Bank of America, account number ending in 3520 | Brooklyn - Sheepshead Bay (New York) |
| 2/9/2012 | $6,900.00 | Total Medical Services, Bank of America, account number ending in 3517 | Garrison Forest (Maryland) |
| 2/9/2012 | $9,000.00 | Total Medical Services, Bank of America, account number ending in 3520 | Reisterstown (Maryland) |
| 2/10/2012 | $4,650.00 | Total Medical Services, Bank of America, account number ending in 3520 | Timonium (Maryland) |
| 2/15/2012 | $9,000.00 | Total Medical Services, Bank of America, account number ending in 3520 | Timonium (Maryland) |
| 2/16/2012 | $9,500.00 | Total Medical Services, Bank of America, account number ending in 3517 | Garrison Forest (Maryland) |
| 2/16/2012 | $9,570.00 | Total Medical Services, Bank of America, account number | Timonium (Maryland) |

| | | | |
|---|---|---|---|
| | | ending in 3520 | |
| 2/21/2012 | $9,360.00 | Total Medical Services, Bank of America, account number ending in 3517 | Sudbrook Lane (Maryland) |
| 2/21/2012 | $1,500.00 | Total Medical Services, Bank of America, account number ending in 3520 | Sudbrook Lane (Maryland) |
| 2/24/2012 | $9,500.00 | Total Medical Services, Bank of America, account number ending in 3520 | Timonium (Maryland) |
| 2/27/2012 | $9,500.00 | Total Medical Services, Bank of America, account number ending in 3520 | Brighton Beach (New York) |
| 3/1/2012 | $9,800.00 | Total Medical Services, Bank of America, account number ending in 3517 | Timonium (Maryland) |
| 3/1/2012 | $9,000.00 | Total Medical Services, Bank of America, account number ending in 3520 | Timonium (Maryland) |
| 3/2/2012 | $9,900.00 | Total Medical Services, Bank of America, account number ending in 3517 | Brighton Beach (New York) |
| 3/2/2012 | $9,000.00 | Total Medical Services, Bank of America, account number ending in 3520 | Timonium (Maryland) |
| 3/8/2012 | $9,000.00 | Total Medical Services, Bank of America, account number ending in 3520 | Garrison Forest (Maryland) |
| 3/9/2012 | $8,000.00 | Total Medical Services, Bank of America, account number ending in 3517 | Garrison Forest (Maryland) |
| 3/9/2012 | $2,100.00 | Total Medical Services, Bank of America, account number ending in 3517 | Aventura Mall (Florida) |
| 3/9/2012 | $9,000.00 | Total Medical Services, Bank of America, account number ending in 3520 | Timonium (Maryland) |
| 3/14/2012 | $5,000.00 | Total Medical Services, Bank of America, account number ending in 3517 | Padonia (Maryland) |
| 3/14/2012 | $9,000.00 | Total Medical Services, Bank of America, account number ending in 3520 | Timonium (Maryland) |
| 3/15/2012 | $9,500.00 | Total Medical Services, Bank of America, account number ending in 3520 | Timonium (Maryland) |

| 3/16/2012 | $9,000.00 | Total Medical Services, Bank of America, account number ending in 3520 | Timonium (Maryland) |
|---|---|---|---|
| 3/22/2012 | $9,500.00 | Total Medical Services, Bank of America, account number ending in 3517 | Padonia (Maryland) |
| 3/22/2012 | $9,500.00 | Total Medical Services, Bank of America, account number ending in 3520 | Timonium (Maryland) |
| 3/23/2012 | $9,000.00 | Total Medical Services, Bank of America, account number ending in 3517 | Timonium (Maryland) |
| 3/23/2012 | $9,000.00 | Total Medical Services, Bank of America, account number ending in 3520 | Padonia (Maryland) |
| 3/26/2012 | $8,360.00 | Total Medical Services, Bank of America, account number ending in 3517 | Brighton Beach (New York) |
| 3/29/2012 | $9,500.00 | Total Medical Services, Bank of America, account number ending in 3517 | Padonia (Maryland) |
| 3/29/2012 | $9,500.00 | Total Medical Services, Bank of America, account number ending in 3520 | Timonium (Maryland) |
| 3/30/2012 | $9,240.00 | Total Medical Services, Bank of America, account number ending in 3517 | Padonia (Maryland) |
| 3/30/2012 | $9,000.00 | Total Medical Services, Bank of America, account number ending in 3520 | Timonium (Maryland) |
| 4/5/2012 | $9,500.00 | Total Medical Services, Bank of America, account number ending in 3520 | Timonium (Maryland) |
| 4/6/2012 | $7,410.00 | Total Medical Services, Bank of America, account number ending in 3517 | Padonia (Maryland) |
| 4/6/2012 | $9,500.00 | Total Medical Services, Bank of America, account number ending in 3520 | Timonium (Maryland) |
| 4/9/2012 | $1,895.00 | Total Medical Services, Bank of America, account number ending in 3517 | Brooklyn-Sheepshead Bay (New York) |
| 4/9/2012 | $9,500.00 | Total Medical Services, Bank of America, account number ending in 3520 | Brooklyn-Sheepshead Bay (New York) |
| 4/10/2012 | $9,500.00 | Total Medical Services, Bank of America, account number | Timonium (Maryland) |

| | | ending in 3520 | |
|---|---|---|---|
| 4/11/2012 | $9,500.00 | Total Medical Services, Bank of America, account number ending in 3520 | Timonium (Maryland) |
| 4/12/2012 | $5,000.00 | Total Medical Services, Bank of America, account number ending in 3517 | Padonia (Maryland) |
| 4/12/2012 | $5,500.00 | Total Medical Services, Bank of America, account number ending in 3520 | Timonium (Maryland) |
| 4/17/2012 | $9,500.00 | Total Medical Services, Bank of America, account number ending in 3520 | Timonium (Maryland) |
| 4/18/2012 | $6,140.00 | Total Medical Services, Bank of America, account number ending in 3517 | Timonium (Maryland) |
| 4/19/2012 | $9,500.00 | Total Medical Services, Bank of America, account number ending in 3520 | Timonium (Maryland) |
| 4/20/2012 | $9,000.00 | Total Medical Services, Bank of America, account number ending in 3517 | Parkville (Maryland) |
| 4/20/2012 | $9,500.00 | Total Medical Services, Bank of America, account number ending in 3520 | Timonium (Maryland) |
| 4/26/2012 | $5,185.00 | Total Medical Services, Bank of America, account number ending in 3517 | Padonia (Maryland) |
| 4/26/2012 | $9,500.00 | Total Medical Services, Bank of America, account number ending in 3520 | Timonium (Maryland) |
| 4/27/2012 | $5,190.00 | Total Medical Services, Bank of America, account number ending in 3517 | Padonia (Maryland) |
| 4/27/2012 | $9,500.00 | Total Medical Services, Bank of America, account number ending in 3520 | Timonium (Maryland) |
| 4/27/2012 | $3,000.00 | Total Medical Services, Bank of America, account number ending in 3520 | Brooklyn-Sheepshead Bay (New York) |
| 4/30/2012 | $6,850.00 | Total Medical Services, Bank of America, account number ending in 3520 | Avenue U and East 21st St. (New York) |
| 5/3/2012 | $9,500.00 | Total Medical Services, Bank of America, account number ending in 3517 | Padonia (Maryland) |

| 5/3/2012 | $9,500.00 | Total Medical Services, Bank of America, account number ending in 3520 | Timonium (Maryland) |
|---|---|---|---|
| 5/4/2012 | $7,210.00 | Total Medical Services, Bank of America, account number ending in 3517 | Timonium (Maryland) |
| 5/4/2012 | $9,500.00 | Total Medical Services, Bank of America, account number ending in 3520 | Padonia (Maryland) |
| 5/7/2012 | $5,000.00 | Total Medical Services, Bank of America, account number ending in 3517 | Timonium (Maryland) |
| 5/10/2012 | $7,000.00 | Total Medical Services, Bank of America, account number ending in 3517 | Padonia (Maryland) |
| 5/10/2012 | $9,500.00 | Total Medical Services, Bank of America, account number ending in 3520 | Timonium (Maryland) |
| 5/11/2012 | $9,500.00 | Total Medical Services, Bank of America, account number ending in 3520 | Timonium (Maryland) |
| 5/14/2012 | $4,290.00 | Total Medical Services, Bank of America, account number ending in 3517 | Avenue U and East 21st St. (New York) |
| 5/14/2012 | $9,500.00 | Total Medical Services, Bank of America, account number ending in 3520 | Brighton Beach (New York) |
| **TOTAL** | **$1,016,410** | | |

In violation of Title 31, United States Code, Section 5324(a)(3) and Title 18, United States Code, Section 2.

# FORFEITURE ALLEGATION

The Grand Jury for the District of Maryland further finds that:

1.     As a result of offenses set forth in Counts One through Thirty-Three of the Indictment, Defendants MICHAEL RESNICK, ALINA MARGULIS, GERALD WISEBERG, WILLIAM CRITTENDEN, and DANIEL ALEXANDER shall be jointly and severally liable to forfeit to the United States any and all property constituting, or derived from, any proceeds obtained directly or indirectly, as a result of said offenses, and all property traceable to such property obtained directly or indirectly as a result of any such violations. The property subject to forfeiture includes but is not limited to a money judgment in the amount of $2,000,000;

2.     As a result of offenses set forth in Count Forty-Three of the Indictment, Defendant MICHAEL RESNICK shall forfeit to the United States any and all property constituting, or derived from, any proceeds obtained directly or indirectly, as a result of said offense, and all property used or intended to be used, in any manner or part, to commit and facilitate the commission of said offense. The property subject to forfeiture includes but is not limited to a money judgment in the amount of $1,016,410; and

3.     If any of the property described above, as a result of any act or omission of the defendant:

   a. cannot be located upon the exercise of due diligence;
   b. has been transferred or sold to, or deposited with, a third party;
   c. has been placed beyond the jurisdiction of the court;
   d. has been substantially diminished in value; or
   e. has been commingled with other property which cannot be divided without difficulty,

it is the intent of the United States of America, pursuant to Title 21, United States Code, Section 853(p), to seek forfeiture of any other property of the Defendants up the amount listed in paragraphs one and two of the forfeiture allegation. The property to be seized pursuant to this

forfeiture allegation includes, but is not limited to, the following:

### Bank Accounts

a.   Janus account ending in 7668 at Janus in the name of Alina Margulis;
b.   Morgan Stanley account ending in 0942 held in the name of Alina Margulis;
c.   Charles Schwab & Co., Inc. account ending in 1656 held in the name of Michael Reznikov;
d.   JP Morgan Chase account ending in 7965 in the name of Michael Resnick;
e.   JP Morgan Chase account ending in 7966 in the name of Michael Resnick and Alina Margulis;
f.   JP Morgan Chase account ending in 2446 in the name of Alina Margulis;

### Real Property

g.   18911 Collins Ave – Unit 602, Sunny Isles Beach, FL 33160 in the name of Collins 18911 LLC;
h.   450 Alton Road, Apt. 1510, Miami Beach, FL 33139 in the name of Alton 1510 LLC;
i.   19111 Collins Ave., Unit 803, Sunny Isles Beach, FL 33160 in the name of Collins 803 LLC;
j.   229 Coleridge St., Brooklyn, NY 11235 in the name of Alina Margulis and Michael Resnick;
k.   235 Coleridge St., Brooklyn, NY 11235 in the name of Alina Margulis and Michael Resnick; and
l.   10275 Collins Ave., Unit 910;Bal Harbour, FL 33154 in the name of Collins 910 LLC.

18 U.S.C. § 982; 21 U.S.C. § 853; 28 U.S.C. § 2461(c); 31 U.S.C. § 5317; Fed. R. Crim. Pro. 32.2(a)

_Rod J. Rosenstein_ BY: DIS

Rod J. Rosenstein
United States Attorney

A TRUE BILL
**SIGNATURE REDACTED**

Foreperson

Date: 9/3/2014

37